UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Coffey & McKenzie, LLC, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 2:20-cv-01671-BHH |
| vs. | ) |
| | ) |
| Twin City Fire Insurance Company, d/b/a The Hartford. | ) **OPINION AND ORDER** |
| | ) |
| Defendant. | ) |
| _____ | ) |

This matter is before the Court on Defendant Twin City Fire Insurance Company's ("Twin City") Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings (ECF No. 8). For the reasons set forth in this Order, the motion is granted and the Court will enter final judgment in favor of Twin City.

**BACKGROUND**

This is an insurance coverage action in which Plaintiff Coffey & McKenzie, LLC ("Law Firm") seeks to recover from its insurer, Twin City, for alleged business losses caused by the coronavirus pandemic. The Law Firm alleges that, as a result of the South Carolina Supreme Court's "Order suspending all Court operations in the State of South Carolina because of the Covaid-19 [sic] virus," "[m]any other non-essential State agencies [being] shuttered by Order of the Governor of the State of South Carolina," and "the effects of this natural disaster upon the general public," the Law Firm reported a business interruption claim to Twin City. (Compl. ¶¶ 7–8, ECF No. 1-1 at 7.) The Law Firm further alleges that Twin City, through its representative, "verbally and immediately refused to honor the contract of insurance between the parties," and that "Plaintiff has not received

1

any other communication from the Defendant since the initial claim for coverage was made." (*Id.* ¶ 9.) However, on March 20, 2020, seven days before the complaint was filed, Twin City sent the Law Firm a letter denying its claim ("Claim Denial Letter"). (ECF No. 8-4.) The complaint includes causes of action for violation of S.C. Code §§ 38-59-20 and -40, declaratory judgment, breach of contract, and bad faith refusal to pay an insurance claim. (*Id.* ¶¶ 11–29.)

Twin City issued a Business Owner's Policy bearing No. 01 SBA BE7451 to the Law Firm with a policy period of July 20, 2019 to July 20, 2020 ("the Policy"). (ECF No. 8-2.) The Special Property Coverage Form of the Policy provides that Twin City "will pay for direct physical loss of or physical damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss." (*Id.* at 32.) With respect to coverage for business income, the form provides that Twin City "will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.' The suspension must be caused by direct physical loss of or physical damage to property at the 'scheduled premises' . . . caused by or resulting from a Covered Cause of Loss." (*Id.* at 40.) The Policy defines Covered Causes of Loss as "RISKS OF DIRECT PHYSICAL LOSS," unless the loss is excluded or limited in other Policy provisions. (*Id.* at 33.)

By endorsement, the Policy excludes loss or damage caused by a virus. The Limited Fungi, Bacteria, or Virus Coverage endorsement provides:

> [Twin City] will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
>
> (1) Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus.

("Virus Exclusion") (*Id.* at 125.) The Virus Exclusion has two exceptions that are not applicable here.

Twin City filed its Rule 12(c) motion for judgment on the pleadings on May 27, 2020. (ECF No. 8.) The Law Firm responded on June 29, 2020 (ECF No. 17), and Twin City replied on July 13, 2020 (ECF No. 21). The parties agreed to stay all discovery pending the Court's resolution of the Rule 12(c) motion. (*See* ECF No. 22.) Twin City subsequently filed six notices of supplemental authority, citing a multitude of cases from around the country, decided after briefing on Twin City's motion was completed, that support the motion for judgment on the pleadings. (ECF Nos. 24, 26–30.) These matters are ripe for consideration and the Court now issues the following ruling.

## STANDARD OF REVIEW

"After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 12(c) motions are designed to "dispose of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further." *Fowler v. State Farm Mut. Auto. Ins. Co.*, 300 F. Supp. 3d 751, 755 (D.S.C. 2017). Judgment on the pleadings is only appropriate where "'the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Id.* at 755–56 (quoting *Lewis v. Excel Mech., LLC*, No. 2:13-CV-281-PMD, 2013 WL 4585873, at *2 (D.S.C. Aug. 28, 2013)). "Courts apply 'the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6),' alleging failure to state a claim." *Goldstein v. F.D.I.C.*, No. CIV.A. ELH-11-1604, 2014 WL 69882, at *3 (D. Md. Jan. 8, 2014) (quoting *Burbach Broadcasting Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002)). Thus,

3

to survive a motion under Rule 12(c), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding same as to Rule 12(b)(6) motion to dismiss). A court reviewing a Rule 12(c) motion may properly consider documents attached to the motion without converting it into a motion for summary judgment, as long as the documents are integral to the complaint and their authenticity is not challenged. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (holding same as to Rule 12(b)(6) motion to dismiss).

## DISCUSSION

As an initial matter, the Court considers both the Policy and the Claim Denial Letter to be integral to the Law Firm's complaint because all of the Law Firm's theories of liability are premised on the existence of an insurance contract—to wit, the Policy—and because, according to the Law Firm, Twin City's denial of its business interruption claim gave rise to the Law Firm's injuries and to the Law Firm's bad faith claim. *See Factory Mut. Ins. Co. v. Liberty Mut. Ins. Co.*, 518 F. Supp. 2d 803, 806–07 (W.D. Va. 2007) (considering insurance policies and claim denial letters).

Review of the complaint reveals that the Law Firm has not properly alleged that its business income loss triggers coverage under the Policy. The complaint does not include any allegation that "direct physical loss of or physical damage to property at the 'scheduled premises' . . . caused by or resulting from a Covered Cause of Loss" has occurred. (*See* ECF Nos. 1-1; 8-2 at 40.) However, even assuming coverage were triggered, the Law Firm's claims are excluded. The Virus Exclusion unambiguously bars the Law Firm's business interruption claim because the Law Firm alleges its losses were caused by a "virus." (*See* Compl. ¶ 7.)

4

Under South Carolina law, "[i]nsurance policies are subject to the general rules of contract construction." *Nationwide Mut. Ins. Co. v. Commercial Bank*, 479 S.E.2d 524, 526 (S.C. Ct. App. 1996) (citation omitted). "Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect." *Williams v. Gov't Emps.' Ins. Co. (GEICO)*, 762 S.E.2d 705, 709 (S.C. 2014) (citation and quotation marks omitted). "Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary and popular meaning." *Id.* at 709–10 (citation and quotation marks omitted). "The court's 'duty is limited to the interpretation of the contract made by the parties, regardless of its wisdom or folly, apparent unreasonableness, or failure [of the parties] to guard their interests carefully.'" *NGM Ins. Co. v. Low Country Finish Carpentry, Inc.*, No. CV 2:11-1016, 2012 WL 13005316, at *2 (D.S.C. Oct. 31, 2012) (quoting *B.L.G. Enters. Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999)) (alteration in original). "An insurer's obligation under a policy of insurance is defined by the terms of the policy and cannot be enlarged by judicial construction." *Sunex Int'l, Inc. v. Travelers Indem. Co. of Ill.*, 185 F. Supp. 2d 614, 617 (D.S.C. 2001) (citing *South Carolina Ins. Co. v. White*, 390 S.E.2d 471, 474 (S.C. Ct. App. 1990)). Moreover, "a court should not adopt a construction of an insurance policy that renders a significant exclusion meaningless." *NGM Ins. Co.*, 2012 WL 13005316, at *4 (citation omitted).

The Court first finds that the Virus Exclusion unambiguously bars coverage for the Law Firm's business interruption claim. The exclusion states that Twin City "will not pay for loss or damage caused directly or indirectly by . . . [the] [p]resence, growth, proliferation, spread or any activity of . . . virus." (ECF No. 8-2 at 125.) It further states

5

that "such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss . . . ." (*Id.*) The Law Firm alleges that COVID-19 is a virus and that this virus caused the closure of South Carolina courts and government agencies. (Compl. ¶¶ 7 & 8.) These closures, along with "the effects of this natural disaster upon the general public," according to the Law Firm, resulted in its business income loss. (*Id.*) Accordingly, the basis of the Law Firm's complaint is that the virus "directly or indirectly" caused the Law Firm's loss and coverage is expressly excluded under the Policy.

Next, the Court finds that because the Law Firm's businesses losses are not covered under the unambiguous terms of the Policy, the breach of contract claim fails as a matter of law. The elements of a breach of contract claim under South Carolina law are: (1) the existence of a contract; (2) its breach; and (3) the damages caused by such breach. *Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (S.C. 1962). As explained above, there is no coverage under the Policy; therefore, the complaint does not allege a plausible breach of contract and this cause of action is dismissed. *See Millennium Inorganic Chems. Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 744 F.3d 279, 286 n.9 (4th Cir. 2014) ("As we find no basis for coverage . . . [the] breach of contract claim, as pleaded, also must fail.").

The Court further finds that the Law Firm's claim for alleged violations of S.C. Code §§ 38-59-20 and -40 fails because these statutes do not provide for a private right of action. The code sections cited in the Law Firm's first cause of action are part of the South Carolina Unfair Claims Practices Act, S.C. Code §§ 38-59-10, *et seq.* ("Claims Practices Act"). Section 38-59-20 provides a list of actions that constitute improper insurance claim

practices, and section 38-59-40 allows for an award of attorneys' fees upon a finding that an insurer acted in bad faith. Courts have repeatedly held that the Claims Practices Act does not create a private right of action. *See, e.g.*, *Masterclean, Inc. v. Star Ins. Co.*, 556 S.E.2d 371, 377 (S.C. 2001) (holding that the Claims Practices Act does not create private causes of action). The Law Firm does not have a private cause of action against Twin City under the Claims Practices Act and this claim fails as matter of law.

      Finally, the Court finds that the Law Firm's complaint does not state a plausible claim for bad faith refusal to pay an insurance claim because Twin City had a reasonable ground to deny the business interruption claim. The elements of a cause of action for bad faith refusal to pay first party benefits under a contract of insurance are: (1) the existence of a contract of insurance; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured. *Crossley v. State Farm Mut. Auto. Ins. Co.*, 415 S.E.2d 393, 396–97 (S.C. 1992). As explained above, benefits are not due under the insurance contract because the Virus Exclusion precludes coverage. Therefore, Twin City's refusal to pay benefits was not improper or unreasonable. Where, an insurer properly and promptly denies coverage under the relevant policy, there is no bad faith. *See Hilton Head Resort Four Seasons Ctr. Horizontal Prop. Regime Council of Co-Owners, Inc. v. Gen. Star Indem. Co.*, 357 F. Supp. 2d 885, 888 (D.S.C. 2005) (holding, where plain language of policy barred coverage, that insurer "cannot be said to have acted in bad faith, breached the contract of insurance, or breached any covenant of good faith and fair dealing with respect to the claim").

The Court notes that it would be extraneous effort to separately discuss the declaratory judgment claim because the result is axiomatic based on the Court's previous findings. Suffice it to say, the declaratory judgment claim is subject to dismissal as a matter of law.

In its opposition, the Law Firm does not directly respond to Twin City's arguments for judgment on the pleadings or citations to controlling precedent. Rather, the Law Firm asserts two peripheral arguments that have no merit here: (1) Twin City's decision to deny coverage was based on its own investigation; and (2) the Policy is an "unconscionable" contract of adhesion. (*See* ECF No. 17 at 4–9.) The first assertion is both incorrect and immaterial. Twin City and the Law Firm agree that the cause of the alleged loss was the COVID-19 virus, and losses caused by a virus are unambiguously excluded from coverage. Thus, Twin City's denial of coverage was premised on the basic facts in the Law Firm's business interruption claim. The second assertion is contradicted by South Carolina law and commonsense. By definition, a Law Firm is a sophisticated party comprised of lawyers who are trained to read, interpret, and understand contracts. *See Lucey v. Meyer*, 736 S.E.2d 274, 284–85 (S.C. Ct. App. 2012) (holding that attorney-plaintiff had meaningful choice in negotiating an employment contract in part because, as a lawyer and former assistant solicitor, she was a sophisticated party, and arbitration clause did not render the contract unconscionable). The Law Firm purchased the state-approved insurance Policy in an arm's length transaction and was fully capable of understanding its terms. The mere presence of an exclusion in the Policy does not render it oppressive or unenforceable. It simply means that there were certain risks—such as losses caused by a virus—that Twin City was not willing to insure. The Law Firm has not

even come close to showing that the Limited Fungi, Bacteria or Virus Coverage endorsement is unconscionable. Accordingly, the Law Firm's claims fail and judgment will be entered for Twin City.

## CONCLUSION

For the reasons set forth above, Twin City's Rule 12(c) motion for judgment on the pleadings (ECF No. 8) is GRANTED. The Clerk of Court is directed to enter final judgment in favor of Twin City.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

April 8, 2021
Charleston, South Carolina